Marsha L. Stephenson, Esq.
Nevada Bar No. 6130
**STEPHENSON & DICKINSON, P.C.**
2820 West Charleston Boulevard, Suite 17
Las Vegas, Nevada 89102
Telephone: (702) 474-7229
Facsimile:  (702) 474-7237
<u>admin@sdlawoffice.net</u>

Attorneys for Plaintiff,
Philadelphia Indemnity Insurance Company

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ST. PAUL MERCURY INSURANCE COMPANY; DOES I-X, and ROE ENTITIES I-X, inclusive,<br><br>Defendants. | Case No.:<br><br>Assigned to the Hon. Judge<br><br>**COMPLAINT** |

Comes now Plaintiff, Philadelphia Indemnity Insurance Company ("Plaintiff"), and for its Complaint against Defendant, St. Paul Mercury Insurance Company ("St. Paul"), alleges:

1. Plaintiff is an insurance company authorized to do business in the State of Nevada. Plaintiff issued commercial general liability policy no. PHPK833471 ("the PIIC Policy") to Summerlin South Community Association ("Summerlin"), located at 10000 W. Charleston Blvd., Las Vegas, Nevada.

2. Plaintiff is incorporated under the laws of the State of Pennsylvania and has its principal place of business in the State of Pennsylvania.

3. Plaintiff is informed and believes that St. Paul is an insurance company

1

1  authorized to do business in the State of Nevada. Plaintiff is informed and believes that St. Paul issued commercial general liability policy no. ZLP-10P02178-12-47 ("the St. Paul Policy") to Par 3 Landscape & Maintenance ("Par 3") located at 4610 Wynn Rd., Las Vegas.

4.  Plaintiff is informed and believes that St. Paul is a corporation organized and existing under the laws of the State of Connecticut and has its principal place of business in the State of Connecticut.

5.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship of the parties and the amount at issue exceeds $75,000.00.

6.  Venue is proper in this Court pursuant to 28 U.S.C. §1391(a)(3) because St. Paul does business in this District, the dispute concerns a policy issued by St. Paul to Par 3 and the performance of duties owed to Summerlin, both of which are located in this District, and the underlying liability claim was litigated in this District.

7.  On June 11, 2012, Summerlin entered into a contract with Par 3 pursuant to which Par 3 was to provide landscaping services for Summerlin ("the Contract"). The Contract includes a promise by Par 3 to "defend, indemnify and hold [Summerlin] harmless from any and all claims, demands, causes of action, judgments, liabilities, losses, costs and expenses (including attorneys fees) in connection with, arising out of or by reason of any act, omission or negligence of" Par 3. The Contract also includes a promise by Par 3 to procure liability insurance and to have such insurance identify Summerlin as an "additional insured".

8.  At approximately 11:00 p.m., on September 12, 2012, Edward Balle ("Balle") suffered injuries while operating his motorcycle on Flamingo Road approaching the roundabout at Granite Ridge Drive. Balle sued Howard Hughes Properties, Inc. ("Hughes"), and others seeking damages for his injuries ("*Balle*"). Hughes filed a Third-Party Complaint against Summerlin and others seeking indemnity

and contribution. Hughes contends that Summerlin is liable because it allowed its landscaping to block a sign warning of the roundabout and because Summerlin sprinklers oversprayed onto the roadway. The landscaping and sprinklers that are alleged to have caused Balle's accident were within the scope of Par 3's work for Summerlin. Balle subsequently also named Summerlin and Par 3 as Defendants.

9. Summerlin tendered its defense to Plaintiff and St. Paul. Plaintiff accepted the tender and provided Summerlin with a defense. While acknowledging that Summerlin is an "additional insured" under its policy, that it provides primary coverage for Summerlin, and that it has a duty to defend Summerlin, St. Paul initially declined to provide Summerlin with a complete defense and, instead, offered only to pay a portion of defense costs. After many months of delay, St. Paul acknowledged that its coverage is primary, and St. Paul agreed to provide Summerlin with a complete defense.

10. In December 2018, St. Paul funded a settlement of Par-3's liability for Balle's injuries. However, St. Paul did not obtain a release for Summerlin of Summerlin's liability resulting from Par-3's work on the landscaping around the sign and on the sprinkler system. Par-3 filed a good faith settlement motion in the *Balle* litigation, seeking to be absolved of any contractual indemnity owed to Summerlin. Balle filed a joinder to the good faith motion, which argued that Summerlin's obligation to maintain the premises in a reasonably safe condition was nondelegable, and that Summerlin remains responsible for any failure on the part of its agent Par-3. After the good faith motion was granted, St. Paul unilaterally withdrew its defense of Summerlin.

11. After St. Paul withdrew from Summerlin's defense, Plaintiff continued to defend Summerlin and incurred $88,407.85 in attorney's fees and costs on behalf of Summerlin.

12. Plaintiff notified St. Paul that its withdrawal from Summerlin's defense was wrongful. Plaintiff also notified St. Paul of settlement discussions between Summerlin and Balle. Notwithstanding the notice, St. Paul refused to resume its

659167.1

defense of Summerlin and refused to participate in settlement discussions on Summerlin's behalf. On March 7, 2019, Plaintiff paid Balle $750,000.00 to settle Summerlin's potential liability to Balle.

13. The St. Paul Policy provides: "We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury . . . that: happens while this agreement is in effect [and] is caused by an event." It also provides: "We'll have the right and duty to defend any protected person against a claim or suit for injury or damage covered by this agreement. We'll have such right and duty even if all of the allegations of the claim or suit are groundless, false, or fraudulent."

14. The St. Paul policy includes an endorsement ("Additional Protected Person Endorsement") providing:

> 1. The following is added to the Who Is Protected Under This Agreement section.
>
> This change adds certain protected persons and limits their protection.
>
> Persons or organizations for your work as required by written contract.
> Any person or organization that:
>
> - is not otherwise a protected person under this agreement; and
> - you agree in a written contract for insurance to add as an additional protected person under this agreement for your work;
>
> is a protected person. But only for covered injury or damage that results from your work for that person or organization.
> . . . .
> Additional protected person may also be called an additional insured in the written contract for insurance.

15. The St. Paul Policy also provides: "This agreement is primary insurance. When there is primary other insurance, we'll share with that other insurance any damages for injury or damage covered by this agreement. . . . However, we'll apply this agreement as excess insurance over the part or parts of any primary or excess other

insurance that provide: . . . protection for you as an additional insured or additional protected person."

16. Plaintiff's Policy provides:

(1) This insurance is excess over:

    (a) Any of the other insurance, whether primary, excess, contingent or on any other basis:
        (i) That is Fire, Extended Coverage, Builder's Risk or similar coverage for "your work"
    . . . .
    (b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

17. In *Everest Nat'l Ins. Co. v. Evanston Ins. Co.*, 2011 U.S. Dist. LEXIS 16876 (D. Nev. 2011), the court, construing Nevada law, cited approvingly to *Hartford Cas. Ins. Co. v. Travelers Indem. Co.*, 110 Cal. App. 4th 710 (2003), in which St. Paul's sister company successfully argued that "other insurance" clauses such as those in the St. Paul Policy and the PIIC Policy make the policy providing "additional insured" coverage (i.e., the St. Paul Policy) primary and the policy issued to the "additional insured" (i.e., the PIIC Policy) excess. Accordingly, it is the obligation of the insurer providing "additional insured" coverage to provide a complete defense, without contribution from the insurer that issued a policy directly to the "additional insured." It is also the obligation of the insurer providing "additional insured" coverage to indemnify the "additional insured", within the coverage of the policy, without contribution from the insured that issued a policy directly to the "additional insured."

## FIRST CLAIM FOR RELIEF

(Declaratory Relief – Defense Duty)

18. Plaintiff incorporates herein paragraphs 1 – 17 above.

19. A dispute now exists between Plaintiff and St. Paul concerning whether St.

Paul breached its duty to Summerlin by withdrawing from Summerlin's defense without first obtaining a release or otherwise protecting Summerlin from liability within the scope of the Additional Protected Person Endorsement of St. Paul's policy. Plaintiff seeks a judgment declaring that St. Paul's coverage for Summerlin in *Balle* was at all times primary while Plaintiff's coverage was excess and, therefore, St. Paul had a continuing duty to defend Summerlin in *Balle* without contribution from Plaintiff.

## SECOND CAUSE OF ACTION
(Declaratory Relief – Indemnity Duty)

20. Plaintiff incorporates herein paragraphs 1 – 19 above.

21. A dispute now exists between Plaintiff and St. Paul concerning whether St. Paul has a duty to reimburse Plaintiff for the settlement paid by Plaintiff on behalf of Summerlin after St. Paul breached its duty to defend. Plaintiff seeks a judgment declaring that St. Paul's coverage for Summerlin in *Balle* was primary while Plaintiff's coverage was excess, St. Paul breached its duty to defend Summerlin, subsequently Summerlin reasonably entered into a settlement with Balle, and, therefore, St. Paul has a duty to reimburse Plaintiff for the settlement paid on behalf of Summerlin.

## THIRD CAUSE OF ACTION
(Equitable Subrogation/Indemnity/Contribution)

22. Plaintiff incorporates herein paragraphs 1-21 above.

23. After St. Paul withdrew, Plaintiff continued to fund the defense of Summerlin against the *Balle* action and incurred $88,407.85 in reasonable and necessary defense costs. Plaintiff also paid $750,000.00 in settlement of Summerlin's liability to Balle.

24. As St. Paul had an ongoing and primary obligation to defend and indemnify Summerlin against the *Balle* action, Plaintiff is entitled to reimbursement from St. Paul for any and all amounts that Plaintiff incurred in the defense and settlement of Summerlin.

Wherefore, Plaintiff prays for judgment:

1. on the first claim for relief, declaring: as primary insurer, St. Paul had a duty to provide Summerlin with a complete defense in *Balle* without contribution from Plaintiff, whose coverage is excess;

2. on the second claim for relief, declaring that, as primary insurer for Summerlin and because of its breach of its duty to defend, St. Paul had an obligation to indemnify Summerlin for the settlement reached with Balle and, therefore, has a duty to reimburse Plaintiff for the settlement payment it made on Summerlin's behalf;

3. on the third claim for relief for an award of damages in the amount of $838,407.85;

4. For costs of suit; and

5. For such additional relief as the Court deems just and proper.

DATED this 21 day of June, 2019.

STEPHENSON & DICKINSON, P.C.

By: *Marsh - Steph*

Marsha L. Stephenson, Esq.
Nevada Bar No. 6130
**STEPHENSON & DICKINSON, P.C.**
2820 West Charleston Boulevard, Suite 17
Las Vegas, Nevada 89102
Telephone: (702) 474-7229
Facsimile: (702) 474-7237
*admin@sdlawoffice.net*

Attorneys for Plaintiff

[CASE NO.:]
COMPLAINT

659167.1